***********
This matter was reviewed by the Full Commission based upon the record of the proceedings before Deputy Commissioner Houser, along with the briefs and arguments on appeal. The appealing party has not shown good ground to receive further evidence or to amend the prior Opinion and Award. Accordingly, the Full Commission adopts and affirms the Deputy Commissioner's holding, with some modification, and enters the following Opinion and Award.
 ***********
The Full Commission finds as fact and concludes as matters of law the following, which were entered by the parties at the hearing on 31 October 2001 as:
 STIPULATIONS
1. The parties were subject to and bound by the provisions of the North Carolina Workers' Compensation Act on all relevant dates herein.
2. An employer-employee relationship existed between plaintiff-employee and defendant-employer on the relevant dates herein.
3. All parties are properly before the Industrial Commission, which has jurisdiction over the parties and the subject matter of this claim.
4. The deceased employee's average weekly wage on the date in question was $480.25, yielding a compensation rate of $320.18.
5. The deceased employee's estate alleges that he was killed by his brother at work in an argument related to work on 26 September 2000.
6. Defendants denied plaintiff's claim pursuant to an Industrial Commission Form 61, filed on 18 December 2000.
7. On 26 September 2000, while working at a logging sight off Low Grand Road in Halifax County, Mr. Wilbert Radel Forbes shot Mr. Ernest Lee Forbes in the face, causing his death. Mr. Wilbert Radel Forbes and Mr. Ernest Lee Forbes, were arguing at the time of this fatal incident.
8. At the hearing, the parties submitted a Packet of Documents which included Industrial Commission Forms, Correspondence, Medical Records, Tax and Wage Records, Discovery and the Transcript of the Criminal Trial, which were admitted into the record and marked collectively as Stipulated Exhibit (2).
9. The issues to be determined are as follows:
a. Whether the deceased employee sustained an injury by accident arising out of and in the course of his employment with defendant-employer;
b. If so, to what benefits is his estate entitled, if any, and;
c. Whether either party is entitled to attorney's fees pursuant to N.C. Gen. Stat. § 97-88.1.
 ***********
Based upon the evidence of record, the Full Commission enters the following:
 FINDINGS OF FACT
1. On 26 September 2000, Mr. Ernest L. Forbes, hereinafter "the decedent," was employed by defendant-employer as a member of a logging crew, which was clearing a tract of timber near Enfield, North Carolina. Defendant-employer was owned by Mr. Kenneth Goodson. The other members of defendant-employer's work crew present on that date were Mr. Ronnie Duncan, Mr. James Duncan, Mr. William Dobson, and Mr. Wilbert Forbes, the decedent's brother.
2. As of 26 September 2000, defendant-employer's crew had been working at the Enfield site for approximately two months, and had equipment stationed at the site. Because the majority of the crew members did not live locally, with this project, crew members stayed at a local motel and traveled to and from the job site each day in a van owned by defendant-employer. Typically, the crew worked Monday through Friday, and serviced equipment on Saturdays.
3. When present at the work site, Mr. Goodson was in charge and was recognized as the foreman or boss. However, based upon the credible evidence of record, when Mr. Goodson was not at the site, Mr. Wilbert Forbes and Mr. Ronnie Duncan served as foremen directing the work, even though neither of these crew members had that as their official job title.
4. On the Saturday prior to 26 September 2000, Mr. Goodson sent the decedent and Mr. Ronnie Duncan to the work site to service the equipment. Prior to their departure to the site, Mr. Goodson specifically instructed them not to take Mr. Wilbert Forbes with them. The reason given for this decision was that Mr. Goodson was concerned about Mr. Wilbert Forbes recent alcohol drinking habits, and the fact that he had caused some trouble at the work site. With their instructions, Mr. Ronnie Duncan and the decedent traveled to the site and accomplished their work servicing the equipment.
5. On the morning of 26 September 2000, Mr. Goodson met the crew at the entrance to the job site at approximately 7:00 a.m. The actual site was approximately one (1) mile from the highway and was only accessible through the use of a logging road. In defendant-employer's work van were Mr. James Duncan, Mr. Ronnie Duncan, Mr. William Dobson, Mr. Wilbert Forbes and the decedent. The crew van followed Mr. Goodson down the logging road to the work site, where they were instructed to inspect and start the equipment, while Mr. Goodson drove back to the highway to meet two other workers. While proceeding back to the highway, Mr. Goodson received a call on his radio from Mr. James Duncan informing him that Mr. Wilbert Forbes had shot the decedent.
6. The testimony of Mr. Goodson and the decedent's co-workers from the criminal trial supports a finding that the decedent and Mr. Wilber Forbes argued on a frequent basis prior to 26 September 2000. This testimony, however does not provide sufficient evidence upon which to enter a finding regarding the specific subject matter of these prior arguments. As for the alcohol drinking habits of Mr. Wilbert Forbes on the date in question, the investigating officer observed no signs of drinking or inebriation.
7. Due to his proximity to Mr. Wilbert Forbes and the decedent on the morning in question, Mr. Ronnie Duncan was able to closely observe the two men, and hear what each said. At the criminal trial, Mr. Ronnie Duncan testified that as the crew was exiting the van that Mr. Wilbert Forbes punched him in the side and said "watch this." Mr. Ronnie Duncan then heard Mr. Wilbert Forbes say to the decedent, "(expletive), if you can do so much without me on Saturdays go grease the loader and change the oil." The decedent then stopped walking, turned towards Mr. Wilbert Forbes, and stated "why do you (expletive) with me so much." Mr. Ronnie Duncan then observed the two men pushing and shoving each other. At that point, Mr. Ronnie Duncan determined that he would intervene and moved to a position so that he could get between the two men. He then heard the decedent state to Mr. Wilbert Forbes, "If I had my knife I would cut your (expletive) throat." As Mr. Ronnie Duncan stepped between the two men and pushed them slightly apart, Mr. Wilbert Forbes pulled out a .38 caliber handgun and pointed it at the decedent's face, and stated to Mr. Ronnie Duncan "You don't believe I'll blow his (expletive) brains out?" According to the criminal trial testimony of Mr. Ronnie Duncan, he then asked Mr. Wilbert Forbes to "stop playing." Next, Mr. Ronnie Duncan observed Mr. Wilbert Forbes pull the hammer back on the gun, and state to the decedent "I'll blow your (expletive)" which was followed by the gun being discharged. Mr. Wilbert Forbes was standing an arms length from the decedent when he fired a single shot that struck the decedent in the nose.
8. Following the shooting, the decedent was transported to Nash Healthcare Systems in Rocky Mount, where he was treated for a gunshot wound to the head that later resulted in his death.
9. On the date of the shooting, Mr. Wilbert Forbes was interviewed by Charles E. Ward, an investigator with the Halifax County Sheriff Department. During this interview, Mr. Wilbert Forbes indicated that although the two brothers often argued, that the argument on the morning of 26 September 2000 was related to their work for defendant-employer.
10. Based upon the credible evidence of record and the reasonable inferences therefrom, the argument on 26 September 2000 that lead to decedent's death was at least in part motivated by Mr. Wilbert Forbes' feelings regarding work having been performed in his absence on the preceding Saturday. Regardless of whether the shooting was intentional or accidental, and regardless of the verdict in the criminal trial, decedent's death was causally related to his work with defendant-employer.
11. On 26 September 2000, the decedent sustained an injury by accident arising out of and in the course of his employment with defendant-employer that resulted in his death.
12. At the time of decedent's death, he was married to Mrs. Caroline Forbes. Mrs. Forbes and the decedent had no children of their own. Mrs. Forbes had a minor daughter, Ms. Ava Chamberlain, who lived with her and the decedent prior to 23 April 1998. Since that date, pursuant to a legal agreement, Mrs. Forbes and Ms. Chamberlain had lived separate and apart from the decedent.
13. During the period in which the couple lived separately, the decedent would deliver his paychecks to his wife. Mrs. Forbes would use his income to supplement her own salary in providing for herself and Ms. Chamberlain in their household. Throughout this period, the decedent resided in a mobile home provided by defendant-employer. Tax returns, which are part of the record, indicate that the couple's filing status during this period was as married, but filing separately. According to Ms. Forbes, the reason for this filing status was to receive the largest return as possible, and was indicative of the state of her marriage to the decedent. Despite this arrangement, Ms. Forbes testified at the hearing that she and the decedent had no plans to become legally separated or to terminate their marriage at the time of his death. In fact, since Ms. Chamberlain turned eighteen (18) years of age in September 2000, Ms. Forbes and the decedent had spent numerous weekends together in the same residence, and had plans to resume residing permanently at the same residence at the time of his death. Ms. Forbes' testimony in this regard is accepted as credible by the undersigned.
14. As of the date of decedent's death, he was no longer providing support for Ms. Ava Chamberlain who was in no manner dependent upon him for her support.
15. On 26 September 2000, the decedent had an acknowledged illegitimate daughter, Ms. Nakesia Elaine Eure. Ms. Eure was born on 23 September 1976, and her birth certificate identified the deceased as her father. According to the credible evidence of record, the decedent paid child support for Ms. Eure until she turned eighteen (18) years of age. At the time of the hearing, Ms. Eure was serving in the U.S. Air Force in Alaska and was not dependent in any manner upon the decedent for support.
 ***********
Based upon the foregoing findings of fact, the Full Commission concludes as follows:
 CONCLUSIONS OF LAW
1. On 26 September 2000, the decedent sustained an injury by accident arising out of and in the course of his employment with defendant-employer that resulted in his death. N.C. Gen. Stat. §§ 97-2(6); 97-38.
2. As the widow of the decedent, Ms. Caroline Forbes is conclusively presumed to have been wholly dependent upon the decedent for support at the time of his death. N.C. Gen. Stat. §§ 97-2(12); 97-39.
3. As the only person who was wholly dependent upon the decedent for support at the time of his death, Ms. Caroline Forbes is entitled to receive the entire award owed herein to the exclusion of all others, that being four-hundred (400) weeks of compensation at the rate of $320.18 commencing as of 26 September 2000. N.C. Gen. Stat. § 97-38.
4. As the result of the decedent's 26 September 2000 injury by accident that resulted in his death, plaintiff is entitled to have defendants pay for all related medical expenses. N.C. Gen. Stat. § 97-25.
5. As the result of the decedent's 26 September 2000 injury by accident that resulted in his death, plaintiff is entitled to have defendants pay for burial expenses pursuant to the terms of N.C. Gen. Stat. § 97-38.
 ***********
Based upon the foregoing findings of fact and conclusions of law, the Full Commission affirms the holding of the Deputy Commissioner and enters the following:
 AWARD
1. Defendants shall pay to plaintiff Caroline Forbes four-hundred (400) weeks of compensation at the rate of $320.18 commencing as of 26 September 2000. From the amounts having accrued, this compensation shall be paid to plaintiff in a lump sum. This compensation is subject to the attorney's fee approved herein.
2. Defendants shall pay for all related medical expenses incurred as the result of the decedent's 26 September 2000 injury by accident that resulted in his death.
3. Defendants shall pay plaintiff for burial expenses pursuant to the terms of N.C. Gen. Stat. § 97-38.
4. A reasonable attorney's fee of twenty-five percent (25%) of the compensation awarded herein is approved for counsel for plaintiff. From the compensation having accrued, this fee shall be deducted from the amounts due plaintiff and paid directly to counsel for plaintiff, with counsel for plaintiff receiving every fourth check thereafter.
 S/_______________ CHRISTOPHER SCOTT COMMISSIONER
CONCURRING:
 S/____________________ THOMAS JEFFERSON BOLCH COMMISSIONER
DISSENTING:
 S/____________ BUCK LATTIMORE CHAIRMAN